## LIMB v. LIMB.

No. 7140. Decided July 7, 1948. (195 P. 2d 263.)

See 17 C. J. S., Contempt, sec. 121. Provision in divorce or separation decree incorporating or based upon agreement for alimony or support as enforceable by contempt proceedings, see note, 154 A. L. R. 443. See, also, 17 Am. Jur. 445.

*Thatcher & Young,* of Ogden, for appellant.

*Walter G. Mann,* of Brigham City, for respondent.

WADE, Justice.

This is an appeal from a judgment finding appellant in contempt of court in a hearing on an order to show cause for failure to pay alimony awarded in a divorce decree.

Two questions are presented on this appeal: (1) Does this court have jurisdiction to hear this appeal since neither the district attorney nor the attorney general has been served with a notice of appeal within the time allowed by law, and (2) does the evidence justify the judgment of the court finding appellant in contempt?

After numerous hearings on an order to show cause brought by plaintiff and respondent herein why appellant should not be found in contempt of court for failure to pay alimony ordered by the court in a divorce proceeding the court found appellant in contempt and ordered him committed to the county jail for 10 days.

Respondent cites the case of *Foreman* v. *Foreman,* 111 Utah 113, 176 P. 2d 165, as authority for the proposition that the judgment of contempt in this case is criminal in nature and that therefore this court has no jurisdiction to hear this appeal since appellant had failed to serve the notice of appeal on an attorney charged to represent the state. While it is true that from some of the language used and the authorities cited in that case one might be led to believe that because the court merely sentenced appellant to jail that the judgment was criminal in nature. However, in the *Foreman* v. *Foreman* case, supra, the judgment of contempt appealed from was made against one not a party to the proceedings in the order to show cause. We said in that case that it is the purpose of the

punishment which determines whether the proceedings is civil or criminal in nature. Where the party litigant suffers a loss or an injury because of the contemptuous conduct, or if the contempt consists of a failure to perform an act enjoined by law, the party litigant is interested in upholding the judgment and vindicating the authority of the court, but he is not interested in so doing where the judgment of contempt is not against one who is a party to the proceedings and such judgment cannot therefore affect any rights of the party litigant. In such a case the judgment is clearly one to uphold the dignity and authority of the court and the burden of vindicating such action should not fall upon a private citizen but it is the duty of the public officials such as the district attorney or attorney general to act in such a case and therefore a notice of appeal must be served on one of these so that the public may have its day in court. From what we have said it follows that since the contempt proceedings were brought by the plaintiff and respondent herein and the judgment grew out of the failure to perform the order of the court to pay all the alimony due, the respondent is directly interested in the outcome of this appeal and was the proper party to serve.

Does the evidence justify the finding that appellant herein was in contempt of court?

The record discloses that in March, 1944, a divorce was granted to the parties herein and the appellant herein was ordered to pay his wife the sum of $75.00 per month for alimony and the support of their two minor children. Appellant paid the amounts due under the decree of divorce up to and including the month of August, 1946. In January, 1947, an order to show cause was issued requiring defendant to appear on February 3, 1947, he having failed to make any of the payments due since the month of August, 1946. At the hearing on this day appellant appeared without counsel and attempted to justify his default by testifying that since September, 1946, he was not regularly employed due to illness and the advice of his doctor that he must not do heavy work; that during that period up until December

24, 1946, he owned a truck and had hauled some beets, grain and coal which had netted him $200.00 or $250.00; that he had to make payments of $80.00 on the truck besides the expense of its upkeep; that he did not work more than twenty days during the whole five months' period, and that he had been unable to find an easy job nor did he have the means to finance an operation to cure his illness. He also testified that he had remarried and had a child of 2½ months upon whom it had been necessary to have performed an expensive operation and that he owed a great many people and that those obligations were pressing. On cross-examination it developed that defendant had some $200.00 or $250.00 owing to him and that he had collected a part thereof in small sums of $15.00 or less but still had about $100.00 due him. The court admonished appellant and told him that his primary obligation was to his wife and children and that the court did not think he was as sick as he would wish the court to believe and the court did not believe that he was incapable of working. The court then continued the hearing until February 17th so that appellant should be able to do something by then. On February 17th the hearing was continued to March 17th, at which time appellant appeared and testified that he had undergone an operation and that he thought he might be able to work in about six weeks. The court then continued the case until April 21st. On April 21st, appellant did not appear but it was explained to the court that it was thought that he had secured a position with a company in Salt Lake whereupon the matter was continued until June 2d. On June 2d appellant again did not appear, but because attorney for respondent was uncertain whether appellant had received notice of the hearing on this day it was again continued until June 16th. On June 16th appellant appeared and testified that he was working and had paid to his former wife $25.00 out of his past pay check, that he was receiving $180.20 a month take-home pay and from that he would be able to pay $50.00 a month to his former wife, and asked the court to reduce his obligation to that amount. The court

informed him that it could not do that without a proper showing and on a proper petition and advised him to get an attorney to represent him. The court then admonished him again that the obligation to his former wife and his children were of primary importance "and that isn't a matter of convenience at all, and I think about the next time you're in, if you come in with a story like this one, you're going to find out it is one of the most important ones." The matter was then continued to July 21st, and on that date appellant failed to appear and on request of the attorney for respondent the matter was continued. On August 18th this matter was heard again and it appeared that since the order to show cause was issued appellant had paid his former wife $125.00. Appellant testified that since he had obtained his job, he had paid his former wife $50.00 a month, leaving himself about $130.00 per month from which he had to support himself, and his present wife and their child, and pay on debts incurred for three operations, and other debts upon which he is forced to make some payment each month. He also advised the court that he had consulted a lawyer who was going to file a petition asking that the decree be amended to reduce the payments to be made for the support of his former wife and their children to $50.00 per month. The court thereupon found appellant guilty of contempt of court and sentenced him to be imprisoned in the county jail for a period of ten days, without making any provision to exonerate him if he made payments.

Appellant argues under the evidence above outlined it is conclusively shown that in spite of his best efforts at all times he was unable to comply with the court's order to pay his wife $75.00 per month. If appellant is correct as to the effect of his testimony then he was not guilty of contempt for a person who puts forth every reasonable effort to comply with a court order and still is unable to do so, is not guilty of contempt on account of such failure.

Appellant testified that he had been sick and out of employment on that account for a number of months and that

he owed a great many debts to various people and that since he had started working again he had paid his former wife $50.00 a month out of a salary of $180.00 a month, from which salary he was paying off some of his debts and supporting a wife and child. He did not testify as to what amounts he was paying on his debts each month out of the $130.00 left him. Can this court say as a matter of law that this evidence is such that it conclusively proves inability of the appellant to obey the order of the court? The lower court had the advantage of seeing and hearing the witness and was in a better position to appraise his ability to pay than this court. It is well known that where necessary families are able to live on amounts that would be considered insufficient by people whose financial means are greater. We are therefore of the opinion that the court could have found that appellant was able to obey its order and that his failure to do so was a wilful contempt.

Affirmed.

McDONOUGH, C. J., and PRATT and LATIMER, JJ., concur.

WOLFE, Justice (concurring).

While I have some doubt as to the wisdom of placing this man in jail for ten days where he cannot earn money and may because of his imprisonment lose his job, I am not able to say that in so ordering the court abused its descretion. I therefore concur in the holding that the conviction of contempt should be sustained.

A man who has brought children into the world cannot in law and good morals escape his obligations to provide for those children by the simple expedient of procuring another wife. But where a man has remarried and has other children by that wife, a difficult problem is posed for the courts in those cases where the income of that man is too small to provide adequately for both families. While the man may have been guilty of a moral wrong in undertaking the obligation of a second family when his income was in-

adequate to support two families, there is little that the courts can do after the second family comes into being. It is then a fait accompli. However wrong it may have been for the husband and father to remarry, being financially unable to do so, the children of the second wife are equally as innocent, and equally entitled to the protection of the law as the children of the first wife. Apportioning an inadequate income between two families is a judicial problem requiring equitable talents of a high degree and the best which can be done is often unsatisfactory.

In this case I think there is ample evidence to support the finding that defendant did not make a reasonably diligent effort to comply with the court's decree requiring the payment of alimony and support money. I therefore concur.